VINCE BAKHDANYAN ESQ. – State Bar No. 331024
PDS LAW OFFICES APC.
450 N. BRAND BLVD. 6TH FLOOR
GLENDALE, CA 91203
Tel: (877) 737-5290
Fax: (888) 356-1188
Email: vinceb@pdslawoffices.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

LIANA HAMPARTSOUMIAN, an Individual,

Plaintiff,

vs.

STATE FARM GENERAL INSURANCE COMPANY, an Illinois Corporation, and DOES 1 through 100, inclusive,

Defendants.

CASE NO.: 2:25-cv-00404-JLS-ASx
District Judge: Josephine L. Staton
Magistrate Judge: Alka Sagar

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS & AUTHORITIES

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1
I. INTRODUCTION ........ 1
II. LEGAL STANDARD ........ 2
III. DEFENDANT CANNOT ESTABLISH AS A MATTER OF LAW THAT THE LOSS RESULTED FROM GRADUAL SEEPAGE ........ 3
IV. DEFENDANT'S EXPERT OPINION DOES NOT ELIMINATE THE FACTUAL DISPUTE ........ 5
V. DEFENDANT BEARS THE BURDEN OF PROVING THE APPLICABILITY OF THE POLICY EXCLUSION ........ 7
VI. CREDIBILITY AND CAUSATION DETERMINATIONS MUST BE RESOLVED BY A JURY ........ 8
VII. SUMMARY ADJUDICATION OF THE BAD FAITH CLAIM IS IMPROPER ........ 9
VIII. PLAINTIFF'S DECLARATORY RELIEF CLAIM PRESENTS A LIVE COVERAGE CONTROVERSY ........ 12
IX. DEFENDANT'S AUTHORITIES DO NOT SUPPORT SUMMARY JUDGMENT ........ 13
X.CONCLUSION ........ 15

# TABLE OF AUTHORITIES

***Cases***

*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 856–857 ....... 3

*Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1163–1164 (9th Cir. 2002) ....... 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ....... 2, 15

*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839 ....... 3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ....... 3, 7

*Garvey v. State Farm Fire & Cas. Co.*, 48 Cal.3d 395, 412 (1989) ....... 8

*Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 994 (9th Cir. 2001) ....... 10, 14

*MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648 (2003) ....... 7

*McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 800 (2008) ....... 12

*Tolan v. Cotton*, 572 U.S. 650, 657 (2014) ....... 2

*Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 723–724 (2007) ....... 9, 14

***Rules***

Fed. R. Civ. P. 56(a) ....... 2, 3, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant State Farm General Insurance Company seeks summary judgment based on the theory that the water damage at Plaintiff Liana Hampartsoumian's home resulted from gradual seepage or leakage occurring over time and therefore falls within a policy exclusion. The evidentiary record does not support that conclusion. Instead, the record demonstrates that the water damage occurred suddenly on September 1, 2023 when a dishwasher discharge hose failed, causing water to spread across the kitchen floor and adjacent areas of the home. (PAMF Nos. 2, 6–7, 14–15.) Plaintiff testified that prior to the incident the dishwasher had functioned normally and that she had never experienced any prior water leakage or recurring moisture issues in the kitchen area as a result of the subject dishwasher. (Hampartsoumian Decl. ¶¶ 3–5, 9; PAMF Nos. 3–4, 20.) The loss was discovered only after Plaintiff left the home and later returned to find substantial water on the floor originating from the dishwasher area. (Hampartsoumian Decl. ¶¶ 6–8; PAMF Nos. 5–7, 21.)

A plumber from Roto-Rooter inspected the dishwasher that same day and documented in a contemporaneous invoice that the "dishwasher discharge hose burst / had come apart." (PAMF No. 14.) The plumber reattached the hose and secured it with a clamp. (PAMF No. 15.) The mitigation contractor who responded to the property likewise observed conditions consistent with a sudden water intrusion event rather than prolonged seepage and reported the absence of mold or other indicators of chronic moisture exposure. (Gevondyan Decl. ¶¶ 6–11; PAMF Nos. 10–12.)

State Farm adjuster Galvis Watkins testified that he remembered the plumber's report stating that the loss involved a dishwasher leak. (PAMF Nos. 16) Watkins testified that he was not familiar with what was observed during State Farm's initial inspection of the property. (PAMF No. 17) Watkins further testified

that his inspections are limited to visual surface inspections and do not involve destructive or intrusive testing. (PAMF No. 18) Watkins also testified that he did not recall whether State Farm authorized moisture testing following the initial inspection. (PAMF No. 19)

Defendant's engineer, by contrast, did not inspect the dishwasher, did not examine the hose that allegedly failed, and performed no testing or reconstruction of the appliance. (PAMF Nos. 22–27.) Instead, his declaration merely hypothesizes that a gradual leak "may" have occurred.

The existence of this competing evidence is fatal to Defendant's motion. Summary judgment may not be granted where the record permits a reasonable jury to conclude that the loss resulted from a sudden discharge of water rather than gradual seepage. Because the evidence permits competing reasonable inferences regarding the cause of the water intrusion, summary judgment cannot be granted.

## II. LEGAL STANDARD

Summary judgment is appropriate only when the moving party demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The purpose of summary judgment is not to resolve disputed factual issues but rather to determine whether any such disputes exist that must be resolved at trial. A factual dispute is considered genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Courts may not weigh evidence or make credibility determinations at the summary judgment stage, as those functions are reserved for the trier of fact. *Anderson*, 477 U.S. at 255. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden is met, the burden shifts to the non-moving party to present evidence demonstrating the existence of a genuine dispute for trial. Id. at 324.

Where the evidentiary record permits competing reasonable inferences regarding causation, summary judgment is inappropriate because the weighing of those competing inferences is reserved for the trier of fact. *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 856–857; *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839. At the summary judgment stage, the Court's role is limited to determining whether genuine disputes exist, not resolving them. Where the record contains competing testimony, contemporaneous documentation, and conflicting expert interpretations regarding the cause of a loss, the Court must refrain from weighing that evidence or choosing between competing factual inferences. The Ninth Circuit has repeatedly emphasized that such determinations are reserved for the trier of fact because Rule 56 does not permit the Court to decide which side's evidence is more persuasive. When the evidence allows reasonable jurors to draw different conclusions, the dispute must proceed to trial.

## III. DEFENDANT CANNOT ESTABLISH AS A MATTER OF LAW THAT THE LOSS RESULTED FROM GRADUAL SEEPAGE

State Farm's motion rests on the assertion that the water damage was caused by repeated seepage or leakage occurring over a period of time. The record evidence directly contradicts that premise. Plaintiff testified that the dishwasher had never previously leaked and had functioned normally before the incident occurred. (Hampartsoumian Decl. ¶¶ 3–5, 9; PAMF Nos. 3–4, 20.) She further testified that the water damage was discovered suddenly after she returned home and observed water covering the kitchen floor and surrounding areas. (Hampartsoumian Decl. ¶¶ 6–8; PAMF Nos. 6–7, 21.) This testimony alone creates a factual dispute as to whether the loss occurred suddenly rather than

gradually.

The plumber who inspected the dishwasher on the day of the incident documented in a contemporaneous invoice that the dishwasher discharge hose had "burst / had come apart." (PAMF No. 14.) The plumber reattached the hose and secured it with a clamp, resolving the problem. (PAMF No. 15.) This documentation was created at the time of the repair and therefore constitutes direct evidence regarding the condition of the hose immediately following the water intrusion event.

Defendant attempts to infer that no sudden failure occurred because the Roto-Rooter invoice did not charge for replacement parts and did not state that the discharge hose was replaced. That argument mischaracterizes the evidence. The plumber documented that the dishwasher discharge hose had "burst / had come apart" and then resolved the problem by reattaching the hose and securing it with a clamp. (PAMF Nos. 14–15.) A hose that separates from its connection point does not necessarily require replacement parts in order to produce a sudden discharge of water and reattachment with a clamp may resolve the issue. The absence of a parts charge does not establish that the water damage resulted from long-term seepage, and it does not eliminate the contemporaneous documentation describing the hose failure observed during the inspection. At most, Defendant's argument reflects a competing interpretation of the repair invoice and that cannot be resolved on summary judgment.

The mitigation contractor who responded to the property likewise observed conditions consistent with a sudden water discharge event rather than long-term seepage. (Gevondyan Decl. ¶¶ 6–11; PAMF Nos. 10–12.) The contractor specifically noted that there was no visible mold or mildew that would indicate chronic or long-standing moisture exposure. (Id.)

Defendant relies on its review of Plaintiff's water bills to argue that a sudden discharge of water could not have occurred because the bills did not show

an isolated spike in water consumption. That argument is speculative and unsupported by competent evidence. Defendant has offered no testimony establishing that a single dishwasher discharge event would necessarily produce a measurable change in monthly water billing data. Moreover, Defendant's own corporate representative acknowledged that he did not recall reviewing all of the water bills produced during the claim investigation. (PAMF Nos. 18–19.) A jury could reasonably conclude that Defendant's reliance on billing records that were not meaningfully analyzed does not establish the absence of a sudden water intrusion event.

Defendant further attempts to cast doubt on Plaintiff's evidence by pointing to a later communication in which the plumber was allegedly asked to revise the wording of his report from "leak" to "burst." Even accepting Defendant's characterization of that communication, it does not eliminate the contemporaneous documentation created on the day of the incident. The Roto-Rooter invoice prepared at the time of the repair independently documents that the discharge hose had "burst / had come apart." (PAMF No. 14.) That contemporaneous record exists regardless of any subsequent revisions to narrative wording. Again, at minimum, the competing interpretations of the plumber's documentation create a credibility question that cannot be resolved on summary judgment.

All of the above referenced evidence stands in direct contrast to Defendant's characterization of the loss as a gradual leak. At minimum, the competing evidence creates a genuine dispute of material fact regarding whether the loss resulted from a sudden hose failure. Where the record permits more than one reasonable inference regarding the cause of the damage, summary judgment must be denied. *Anderson*, 477 U.S. at 248.

## IV. DEFENDANT'S EXPERT OPINION DOES NOT ELIMINATE THE FACTUAL DISPUTE

Defendant relies heavily on the declaration of engineer Robert Carnahan to

argue that the loss must have resulted from gradual leakage rather than a sudden failure of the discharge hose. Carnahan's opinions do not eliminate the factual dispute created by Plaintiff's evidence. Carnahan did not inspect the dishwasher that allegedly caused the loss, did not examine the discharge hose, and did not conduct any testing of the appliance or plumbing components. (PAMF Nos. 22–24.) His opinions are based solely on photographs and documents rather than direct examination of the physical evidence. (PAMF No. 25.) Carnahan also performed no reconstruction or simulation of the alleged dishwasher failure. (PAMF Nos. 26–27.)

Defendant also relies on photographs produced during discovery to argue that the discharge hose simply detached from the air-gap connection rather than bursting. Those photographs, however, do not conclusively establish the cause of the failure. At most, they provide one possible interpretation of the physical configuration of the hose after the incident occurred. Plaintiff, by contrast, relies on contemporaneous repair documentation, eyewitness observations, and mitigation findings indicating that the hose failure produced a sudden discharge of water into the kitchen area. (PAMF Nos. 10–15.) Determining which interpretation of the physical evidence is more persuasive requires the weighing of competing inferences, a task that is reserved for the trier of fact rather than the Court on summary judgment.

Defendant further relies on its expert's assertion that the dishwasher model at issue uses approximately 3.2 gallons of water per cycle and therefore could not have produced the damage observed at the property absent gradual leakage over time. This theory is speculative. Carnahan did not inspect the dishwasher, did not examine the discharge hose, and did not conduct any testing or reconstruction of the appliance to determine how water may have escaped during the failure event. (PAMF Nos. 22–27.) Instead, he offers a theoretical calculation based on manufacturer specifications rather than direct examination of the appliance

involved in the loss. A jury could reasonably conclude that the observed damage conditions and contemporaneous repair documentation provide more reliable evidence of the cause of the water intrusion than a retrospective theoretical estimate based on product specifications.

Instead of identifying evidence demonstrating gradual seepage, Carnahan merely hypothesizes that the discharge hose "may have loosened over time." At summary judgment, a moving party must present evidence sufficient to demonstrate that no reasonable jury could find otherwise. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Speculative expert opinions that are unsupported by testing or physical inspection do not eliminate competing evidence in the record.Expert testimony that rests on assumptions rather than evidence does not entitle a moving party to summary judgment. Moreover, the Ninth Circuit has repeatedly emphasized that summary judgment is inappropriate where the parties present competing expert interpretations of the same events. Determining which interpretation is more credible is a function reserved for the jury rather than the court. Because Carnahan's opinions are speculative and directly contradicted by other evidence in the record, they do not eliminate the factual dispute regarding the cause of the water intrusion.

## V. DEFENDANT BEARS THE BURDEN OF PROVING THE APPLICABILITY OF THE POLICY EXCLUSION

Even if Defendant's theory were plausible, the motion fails because Defendant bears the burden of proving that the policy exclusion applies. Under California law, an insurer has the burden of establishing that a claim falls within a policy exclusion. *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 648 (2003). Exclusions are interpreted narrowly, and any ambiguity regarding their application must be resolved in favor of coverage. *Id.* Here, the exclusion relied upon by State Farm applies only where the damage results from ***repeated*** seepage or leakage occurring over a period of time. The evidence summarized above permits a

***reasonable inference*** that the water damage instead resulted from a sudden discharge caused by the failure of the dishwasher hose. Because Defendant cannot establish the applicability of the exclusion as a matter of law, summary judgment is improper.

The California Supreme Court has also recognized that causation questions under insurance policies frequently involve factual determinations that must be resolved by the trier of fact. *Garvey v. State Farm Fire & Cas. Co.,* 48 Cal.3d 395, 412 (1989). When the evidence supports competing inferences regarding the cause of the damage, the issue must be decided by the jury rather than on summary judgment. This principle is particularly important in insurance coverage disputes because determining the operative cause of a loss often requires the trier of fact to evaluate competing explanations for the event and decide which account of the evidence is more credible.

Finally, the policy language quoted by Defendant itself confirms that coverage cannot be resolved as a matter of law on this record. The policy provides that State Farm will pay for "any resulting loss" from certain excluded conditions unless the resulting loss is itself excluded. (PAMF No. 1.) Even if Defendant were correct that a component failure occurred at the dishwasher hose connection, the resulting water damage to the surrounding flooring and interior areas constitutes a separate loss that cannot be excluded without a factual determination regarding the cause and sequence of events. Because the evidence permits competing interpretations of how the water intrusion occurred and what damage resulted from that event, the applicability of the policy exclusion cannot be determined on summary judgment.

## VI. CREDIBILITY AND CAUSATION DETERMINATIONS MUST BE RESOLVED BY A JURY

Defendant's motion ultimately asks the Court to resolve conflicting evidence regarding the cause of the water loss. Plaintiff relies on her own

testimony regarding the sudden discovery of the water damage, the plumber's contemporaneous invoice documenting a burst hose, and the mitigation contractor's observations that the damage was consistent with a sudden discharge event. (Hampartsoumian Decl. ¶¶ 3–8; Gevondyan Decl. ¶¶ 6–11; PAMF Nos. 2–15.) Defendant, by contrast, relies on a retrospective interpretation of photographs and the speculative opinions of an expert who never inspected the appliance that allegedly failed. (PAMF Nos. 22–27.)

Resolving these competing accounts necessarily involves evaluating witness credibility and weighing the relative persuasiveness of the evidence. The Supreme Court has made clear that such determinations may not be made at the summary judgment stage. *Anderson*, 477 U.S. at 255. Where the evidence supports more than one reasonable interpretation, the dispute must be resolved by the jury.

## VII. SUMMARY ADJUDICATION OF THE BAD FAITH CLAIM IS IMPROPER

Defendant also seeks summary adjudication of Plaintiff's claim for breach of the implied covenant of good faith and fair dealing based on the "genuine dispute doctrine." That argument fails because the reasonableness of State Farm's investigation and claim handling remains genuinely disputed. Under California law, an insurer may not escape bad-faith liability merely by producing an expert opinion supporting its coverage position. The insurer must demonstrate that its claim handling and investigation were reasonable under the circumstances. When the adequacy of the investigation itself is disputed, summary judgment on the bad-faith claim is inappropriate.

The California Supreme Court has explained that the genuine dispute doctrine does not relieve an insurer of liability where the insurer's investigation was inadequate or biased. *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 723–724 (2007). In *Wilson*, the Court held that an insurer cannot rely on the genuine

dispute doctrine where its coverage determination rests on an unreasonable investigation or where the insurer ignores evidence supporting coverage. The Ninth Circuit has similarly recognized that an insurer's reliance on expert opinions does not automatically establish a genuine dispute where the investigation itself may have been unreasonable. *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1163–1164 (9th Cir. 2002). The Ninth Circuit likewise recognizes that the genuine dispute doctrine does not apply where the insurer's investigation was unreasonable or where the insurer ignored evidence supporting coverage. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 994 (9th Cir. 2001). When the evidence supports competing inferences regarding whether the insurer conducted a fair and objective investigation, the issue must be resolved by a jury.

Here, the record contains substantial evidence that State Farm's investigation was incomplete and one-sided. Defendant's expert, Robert Carnahan, did not inspect the dishwasher that allegedly caused the loss, did not examine the discharge hose that failed, and performed no testing or reconstruction of the appliance. (PAMF Nos. 22–27.) Instead, Carnahan formed his opinions based solely on photographs and documents rather than a physical inspection of the plumbing components involved in the loss. (PAMF No. 25.) A jury could reasonably conclude that forming a causation opinion without examining the appliance or the allegedly defective component reflects an inadequate investigation rather than a reasonable basis for denial.

State Farm's own adjuster testimony further reflects the limited nature of Defendant's investigation. State Farm adjuster Galvis Watkins testified that he remembered the plumber's report stating that the loss involved a dishwasher leak. (PAMF No. 16.) Watkins testified that he was not familiar with what was observed during State Farm's initial inspection of the property. (PAMF No. 17.) Watkins further testified that his inspections are limited to visual surface inspections and do not involve destructive or intrusive testing. (PAMF No. 18.)

Watkins also testified that he did not recall whether State Farm authorized moisture testing following the initial inspection. (PAMF No. 19.)

The contemporaneous evidence available to State Farm also supported a sudden water discharge rather than gradual seepage. Plaintiff reported that the water damage was discovered suddenly on September 1, 2023 after returning home to find water covering the kitchen floor and adjacent areas. (Hampartsoumian Decl. ¶¶ 6–8; PAMF Nos. 6–7.) The plumber who inspected the dishwasher that same day documented that the dishwasher discharge hose had "burst / had come apart," and he resolved the issue by reattaching the hose and securing it with a clamp. (PAMF Nos. 14–15.) The mitigation contractor likewise observed damage consistent with a sudden water release and reported the absence of mold or other indicators of chronic leakage. (Gevondyan Decl. ¶¶ 6–11; PAMF Nos. 10–12.)

Despite this evidence, State Farm denied coverage based on its assumption that the damage must have resulted from long-term seepage or leakage. A reasonable jury could conclude that the insurer discounted or ignored evidence supporting a sudden discharge in favor of a speculative causation theory developed after the fact. Under California law, such conduct may support a finding of bad faith because insurers have a duty to fully and fairly investigate claims before denying coverage. *Wilson*, 42 Cal.4th at 723.

Moreover, the Ninth Circuit has made clear that the genuine dispute doctrine does not apply where the insurer's position is based on speculation rather than objective evidence. *Amadeo*, 290 F.3d at 1163. Here, Carnahan's declaration merely hypothesizes that the discharge hose "may have loosened over time," even though he never inspected the appliance or the failed hose. (PAMF No. 26.) A jury could reasonably find that this speculative theory does not constitute a reasonable basis for denying coverage, particularly in light of the contemporaneous plumber documentation describing a sudden failure of the hose.

Because the adequacy and objectivity of State Farm's investigation are genuinely disputed, summary adjudication of the bad-faith claim would be improper. Determining whether the insurer acted reasonably requires the trier of fact to evaluate the credibility of witnesses and weigh competing evidence regarding the cause of the loss and the sufficiency of the investigation. Those determinations cannot be made on summary judgment.

## VIII. PLAINTIFF'S DECLARATORY RELIEF CLAIM PRESENTS A LIVE COVERAGE CONTROVERSY

Defendant also seeks summary adjudication of Plaintiff's declaratory relief claim on the ground that it purportedly seeks only a retrospective determination regarding past claim handling. That argument mischaracterizes the nature of the claim. Plaintiff seeks a declaration regarding the parties' rights and obligations under the insurance policy, including whether the loss at issue is covered under the policy's terms. Declaratory relief remains appropriate where, as here, the parties dispute the scope of coverage and the insurer continues to maintain that the loss falls within a policy exclusion.

Declaratory relief is appropriate where parties dispute their respective rights and obligations under a written contract. California courts have repeatedly recognized that insurance coverage disputes are particularly well suited for declaratory adjudication because the parties require a judicial determination regarding the interpretation and application of policy provisions. *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784, 800 (2008). The purpose of declaratory relief is to resolve such controversies and clarify the legal relationship between the parties before additional disputes arise.

In this case, the parties sharply dispute whether the homeowner's policy provides coverage for the water damage that occurred at Plaintiff's property. Defendant contends that the loss falls within the policy's seepage exclusion, while Plaintiff contends that the loss resulted from a sudden discharge of water and is

therefore covered. The resolution of this dispute necessarily requires interpretation of the policy provisions governing water damage and the applicability of the exclusion relied upon by State Farm. Because the parties continue to disagree regarding the scope of coverage under the policy, an actual and present controversy exists that is properly resolved through declaratory relief.

Furthermore, courts routinely allow declaratory relief claims to proceed alongside breach of contract and bad-faith claims in insurance litigation because the declaratory claim provides a mechanism for determining coverage obligations under the policy. The fact that the declaratory claim overlaps with the breach of contract claim does not render it improper; rather, it reflects the reality that insurance coverage disputes often involve both contractual damages and judicial clarification of policy rights.

Here, the evidence discussed above demonstrates that genuine disputes exist regarding the cause of the water damage and the applicability of the policy exclusion relied upon by Defendant. Those disputes directly affect the parties' rights and obligations under the insurance contract. Because an actual controversy regarding coverage plainly exists, Defendant cannot establish as a matter of law that Plaintiff's declaratory relief claim fails. Accordingly, summary adjudication of the declaratory relief claim should be denied. Even if the Court were to disagree on one issue, summary adjudication is still improper because factual disputes remain regarding causation and claim handling.

## IX. DEFENDANT'S AUTHORITIES DO NOT SUPPORT SUMMARY JUDGMENT

Defendant relies on several authorities addressing insurance coverage disputes and the genuine dispute doctrine. Those cases do not compel summary judgment here because they involve materially different factual circumstances, most notably situations in which the evidentiary record did not contain competing evidence regarding the cause of the loss or the adequacy of the insurer's

investigation.

First, Defendant's reliance on cases applying policy exclusions for long-term seepage or gradual leakage is misplaced because those decisions typically involve situations in which the insured failed to present evidence contradicting the insurer's determination that the damage occurred over time. Here, by contrast, Plaintiff has presented direct evidence demonstrating that the water intrusion occurred suddenly when the dishwasher discharge hose failed. Plaintiff testified that the dishwasher had never previously leaked and that the water damage was discovered abruptly after she returned home. (Hampartsoumian Decl. ¶¶ 3–8; PAMF Nos. 3–7.) The plumber who inspected the appliance on the day of the loss likewise documented that the discharge hose had "burst / had come apart" and repaired the problem by reattaching the hose with a clamp. (PAMF Nos. 14–15.) This contemporaneous documentation directly contradicts Defendant's characterization of the loss as gradual seepage.

Second, Defendant's reliance on authorities addressing the genuine dispute doctrine does not entitle it to summary adjudication of the bad-faith claim. The Ninth Circuit has made clear that the doctrine applies only where the insurer's coverage position is based on a reasonable investigation and an objectively reasonable evaluation of the available evidence. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 994 (9th Cir. 2001). The doctrine does not apply where the adequacy of the insurer's investigation is itself disputed. *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 723–724 (2007). In this case, Defendant's expert did not inspect the dishwasher that allegedly caused the loss, did not examine the discharge hose that failed, and performed no testing or reconstruction of the appliance. (PAMF Nos. 22–27.) A reasonable jury could conclude that forming a causation opinion without examining the allegedly defective component reflects an incomplete investigation rather than a reasonable basis for denying coverage.

Third, the authorities cited by Defendant do not address circumstances in

which competing expert opinions and contemporaneous repair documentation create a factual dispute regarding the cause of the loss. Courts have repeatedly recognized that summary judgment is inappropriate where the record contains competing evidence regarding causation. See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) (summary judgment improper where evidence permits a reasonable jury to return a verdict for the non-moving party). Here, Defendant's expert merely hypothesizes that the discharge hose "may have loosened over time," while the plumber who inspected the appliance contemporaneously documented that the hose had burst or come apart. (PAMF Nos. 14–15, 26.) Resolving that conflict requires evaluating the credibility and weight of the competing evidence, which is a function reserved for the jury rather than the court.

Accordingly, the authorities cited by Defendant do not eliminate the genuine disputes of material fact present in this case. At most, they demonstrate that courts may grant summary judgment where the evidentiary record contains no conflicting evidence regarding causation or claim handling. Because the record here contains substantial evidence supporting Plaintiff's theory of a sudden water discharge and raising questions regarding the adequacy of Defendant's investigation, those authorities do not support summary judgment.

## X.CONCLUSION

The record contains substantial evidence demonstrating that the water damage resulted from a sudden discharge caused by the failure of a dishwasher discharge hose. At a minimum, the record presents competing evidence regarding the cause of the loss, including Plaintiff's testimony, contemporaneous repair documentation, mitigation observations, and Defendant's speculative expert opinions. Because Rule 56 does not permit the Court to resolve such competing factual narratives or determine which interpretation of the evidence is more credible, the dispute must be resolved by the trier of fact rather than on summary

judgment.

Because Defendant cannot establish the absence of a genuine factual dispute regarding these issues, summary judgment is inappropriate. Defendant's motion for summary judgment should therefore be denied in its entirety

Date: March 13, 2026

PDS LAW OFFICES APC

Vince Bakhdanyan, Esq.,
Attorney for Plaintiff