# EXHIBIT 1

# Deposition Transcript

Case Number: 2:25-cv-00404-JLS-ASx
Date: February 25, 2026

In the matter of:

# LIANA HAMPARTSOUMIAN v STATE FARM GENERAL INSURANCE COMPANY

# Galvis Watkins

CERTIFIED COPY

Reported by:
Tomeka McAlpine

Steno
Agency, Inc.

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(888) 707-8366
NV: Firm #108F

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

CASE NO.: 2:25-cv-00404-JLS-ASx

LIANA HAMPARTSOUMIAN,
an individual,

Plaintiff,

vs.

STATE FARM GENERAL
INSURANCE COMPANY, an
Illinois corporation, DOES 1 through
100, inclusive,

Defendants.
____________________________________/

REMOTE DEPOSITION OF GALVIS WATKINS

Pages 1 through 37

DATE TAKEN: Wednesday, February 25, 2026

TIME: 10:02 a.m. to 11:10 a.m.

LOCATION: Remote via videoconference

Steno
Concierge@steno.com
(888)707-8366

REMOTE APPEARANCES

On Behalf of the Plaintiff(s):
PDS LAW OFFICES APC.
450 North Brand Boulevard, 6th Floor
Glendale, California 91203
877-737-5290
BY: CORY H. HURWITZ, ESQUIRE
Vinceb@pdslawoffices.com

On Behalf of the Defendant(s):
FREEMAN MATHIS & GARY, LLP
550 South Hope Street, 22nd Floor
Los Angeles, California 90071
213-615-7082
BY: MICHAEL BRIAN GELFOUND, ESQUIRE
michael.gelfound@fmglaw.com

INDEX OF PROCEEDINGS

DEPOSITION OF GALVIS WATKINS


| | Page |
|---|---|
| Direct Examination by Mr. Bakhdanyan | 4 |
| Errata | 38 |
| Certificate of Oath | 39 |
| Certificate of Reporter | 40 |


PLAINTIFF'S EXHIBITS


| Number | Description | Page |
|---|---|---|
| 1 | Initial Plumber's Report | 20 |
| 2 | Additional Plumber's Report | 21 |
| 3 | Maze Restoration's Mitigation Invoice | 23 |
| 4 | Maze Restoration Photographs | 26 |
| 5 | Water Bill | 31 |


- - - - - - - - - - - - - -

Remote deposition taken before Tomeka McAlpine, Court Reporter and Notary Public in and for the State of Florida at Large in the above cause.

THE STENOGRAPHER: The parties and their counsel further agree that while I'm a licensed court reporter, the witness may be in a state where I am not licensed. The parties stipulate that this deposition may be taken before me.

If any party does have an objection to this manner of reporting or anything stated above, please state so now. Hearing none, we can proceed.

The attorneys appearing in this deposition acknowledge that I am not physically present in the deposition room, that I will be reporting on this deposition remotely, and that I will administer the oath to the witness remotely.

Mr. Watkins, please raise your right hand. Do you swear or affirm that the testimony you're about to give is the truth, the whole truth, and nothing but the truth?

THE WITNESS: Yes.

THE STENOGRAPHER: Thank you.

GALVIS WATKINS,

having first been duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. BAKHDANYAN:
Q Good morning. Please state and spell your first name for the record. First and last name for the record.
A Galvis Watkins. G-a-l-v-i-s, W-a-t-k-i-n-s.
Q Thank you. Now, allow me to introduce myself. My name is Vince Bakhdanyan, and I represent plaintiff Liana Hampartsoumian in her lawsuit against State Farm.
A Okay.
Q Now, before we start, I want to talk to you about a few ground rules to make sure you are fully informed of the deposition procedures.
Now, even though this deposition is being taken in a relatively informal setting, I want to remind you that you are under oath. You have sworn to tell the truth, and the effect of that oath is the same as if you were testifying in court?
Do you -- do you understand that?
A Yes.
Q Have you ever been deposed before?
A Yes.
Q Okay. Now, that deposition, when was that?
A That was in '24.
Q Okay. Why were you deposed?
A Another -- another claim.

Q Okay. Now, was it a State Farm claim?
A Yes.
Q Okay. Was it a water damage claim?
A Yes.
Q Okay. Can you tell me about the facts of loss in that lawsuit?
A I don't recall. I mean, that's been two years ago.
Q I mean, it hasn't been 20 years ago. It hasn't been ten. You don't recall anything about that lawsuit?
A Not -- no.
MR. GELFOUND: Hold on, sorry. I'm just going to object to vague and ambiguous.
BY MR. BAKHDANYAN:
Q You can answer the question, Mr. Watkins.
A No, I don't -- I don't -- I honestly don't remember it. I don't want to mislead you about a claim, I don't remember. I haven't looked at it.
I honestly don't even remember the name of the counsel.
Q Okay. What was your role when you were deposed? Meaning -- let me rephrase that.
Why -- why were you deposed?
A Why? Why was I deposed?
Q Yes.

A Because there was a suit filed.
Q Okay. What were the issues in that case that led to you being deposed?
A Like I said, I don't recall the claim well enough to -- to expand on that.
Q You don't remember anything about the claim?
A I remember it was a water loss.
Q Okay. Was it in the state of California?
A Yes.
Q Okay. Do you remember the name of the plaintiff?
A No.
Q Okay. Do you remember where the property was located with respect --
A No.
Q Okay. No. So that's the only deposition you've been a part of?
A Yes.
Q Okay. Have you ever been named as a defendant in a lawsuit?
A No.
Q Okay. And have you ever been named as a plaintiff in a lawsuit?
A No.
Q Have you ever testified in court?

A No.

Q Okay. So everything that is being said is being taken down by the court reporter verbatim unless everyone agrees to go off the record. This means your answers need to be audible. No shakes of the head, no nods, no shoulder shrugs.

Do you understand that?

A Yes.

Q So the court reporter needs to take down each person's words. Do you understand that?

A Yes.

Q Now, the court reporter is recording all the questions, answers, and objections and will reduce that information to a transcript form after the deposition ends.

You will have the opportunity to -- opportunity to read the transcript and correct any inaccuracies. You will then sign the transcript and it will be given to your counsel?

I want to warn you, though, if you make any changes in your transcript that are inconsistent with the answers given in the deposition, I will be entitled to comment on those discrepancies at trial to question your credibility.

And if any question that I ask today is unclear

in any way, please let me know and I will reword the question. I need -- for purposes of today's deposition, I don't want you to guess, but if you can, you could provide estimates based on your observations or your recollection.

Let me give you an example. Are you sitting in front of a desk right now?

A Yes.

Q Okay. You -- you're looking at that desk. I'm sure you've seen that desk before. So if I were to ask you to give me an estimate of the desk you're sitting in front of, you could give me a -- you could give me an estimate because you observed it in the past and you're looking at it right now, correct?

A Can you rephrase? I just want to make sure I understand, like an estimate. Like what the cost value or like --

Q I want to explain the difference between an estimate and a guess. So --

A Okay.

Q -- as far as the desk is concerned in front of you, you're in front of it right now, right?

A Yes.

Q You're looking at the desk, correct?

A Yes.

Q If I were to ask you to give me an estimate of the length of the desk, you would be able to give me an estimate, correct?
A Right.
Q Okay. But if I were to ask you to give me an estimate of the desk I'm sitting in front of right now, you'd be guessing. Now, do you understand the difference between a guess and an estimate?
A Yes. Now -- I'm understanding what you're saying now.
Q Okay. And if any time you need a break, please let me know. I just ask that you do not ask for a break while a question is pending. Do you understand?
A Yes.
Q Okay. Have you taken any medications that will prevent you from answering my questions?
A No.
Q Have you taken any drugs or consumed any alcohol within the past 24 hours?
A No.
Q Is there any reason why we can't get your best testimony here today?
A No.
Q Okay. Now, what is your current occupation?
A Claims adjuster.

Q Who do you work for?
A State Farm.
Q And how long have you been working for State Farm?
A Directly, five years.
Q Okay. Now, when you began working with State Farm five years ago, were you in the role of a claims adjuster, or did you have another role?
A Claims adjuster.
Q Okay. So you've been a claims adjuster with State Farm for the past five years?
A Yes.
Q And during your time with State Farm, you have not held any other positions within State Farm?
A No. Just claims adjuster.
Q Okay. What are some of your duties as a claims adjuster?
A Inspections, estimate writing, investigations.
Q Okay. Now -- so you said estimates and estimate writing inspections. Are you a field adjuster or a desk adjuster?
A Field adjuster.
Q You're a field adjuster. Now, prior to State -- prior to your employment with State Farm, who were you working for?

A Prior to my employment with State Farm?
Q Prior to your employment with State Farm.
A State Farm?
Q Yes.
A Well, I worked, you know, in the concrete industry, so I worked for a lot of different contractors.
Q Okay. So how long were you working for the -- how long were you working in the concrete industry?
A Twenty years.
Q Okay. And were you working for a specific company or were you just an independent contractor?
A I was sort of, like, independent. So I pick up different contracts depending on the length of the job from various general contractors.
Q Understood. Now, are you a claims adjuster licensed in the state of California for State Farm?
A I'm licensed in the state of Texas and endorsed by California, yes.
Q What other states are you licensed as a adjuster in the United States?
A Quite a few. I don't -- you know, I can name, but I can be -- I can -- like, Mississippi, Georgia, Oklahoma, Nevada -- you know, Nevada, New Mexico, Vermont.
I could be missing some, honestly, without

looking at my license list.
Q Okay. No problem. Now, you adjusted claims in various states across the U.S., correct?
A Yes.
Q Okay. And are you familiar with the claims handling regulations in California?
A Yes.
Q Okay. Now, did you handle the plaintiff's claim personally?
A Yes.
Q Okay. Did you have the authority to evaluate and recommend payment or denial of the claim?
A I have -- I have preliminary authority.
Q Okay. What do you mean by preliminary authority?
A Meaning I have the authority to inspect. I have the authority to investigate. I have the authority to present the -- my findings, and I have the preliminary authority for coverage or denial.
Q Okay. You have the preliminary authority for coverage or denial. So you said preliminary. Is there someone above you, like a manager, that has a final -- final say?
A Yes.
Q Who is that?

A Ellen Redmond.
Q What's Helen's role in State Farm?
A Ellen.
Q Ellen, I'm sorry.
A Yes. She was my manager as far as --
Q Your manager --
A Yes.
Q And you understand that California law requires you to conduct a full, fair, and unbiased investigation, correct?
MR. GELFOUND: Objection. Calls for a legal conclusion, expert opinion.
THE WITNESS: Yes.
BY MR. BAKHDANYAN:
Q Do you recall handling this claim?
A Yes.
Q Okay. Did you review any documents to prepare for today's deposition?
A Yes.
Q What did you review?
A Reviewed the file that was presented to me.
Q What was in the file?
A Appeared to be file notes from the claim handling.
Q Okay. So the claim file?

A Yes.
Q Now, do you know what the reported cause of the -- the property damage was for this law -- for this claim?
A I know what the plumber's report stated.
Q So it was a dishwasher discharge hose malfunction leading to interior water damage, correct?
A I remember the -- the -- the plumber's report stating a dishwasher leak, yes.
Q Okay. When you were assigned, did you review -- when you were -- when were you assigned to this claim specifically? Do you remember a date?
A I remember -- I believe in January 2024.
Q You sure it was January 2024?
A I believe that's -- that was the time, for my best recollection.
Q And are you familiar with what was observed during State Farm's initial inspection?
A No.
Q Okay. Do you know who conducted the inspection?
A No.
Q Okay. Did you review the report or results of the inspection with the person who conducted it?
A No.

Q You did not. Do you know if the inspection was just a visual inspection?
A I don't --
MR. GELFOUND: I'm sorry. I'm sorry. Objection. Calls for speculation.
THE WITNESS: I don't recall.
BY MR. BAKHDANYAN:
Q So you haven't reviewed any notes or any report about this initial inspection at all?
A I reviewed the plumber's report and the photos in the claim.
Q Okay. I'm --
MR. BAKHDANYAN: Objection. Non-responsive. Move to strike.
BY MR. BAKHDANYAN:
Q That was not my question. Have you -- I'm not talking about the plumber's report.
A Okay.
Q Have you reviewed a report from the initial State -- well, I -- strike that. Let me rephrase that.
Have you reviewed a report from the State Farm representative who conducted an initial inspection?
MR. GELFOUND: Objection. Objection. Vague and ambiguous. Assumes facts not in evidence.
THE WITNESS: Okay. I have -- I reviewed the

claim file that was presented to me when I took over the claim. I will answer it like that.

BY MR. BAKHDANYAN:

Q Okay. So you reviewed the claim file when you took over the claim, correct?

A Correct.

Q And had a initial inspection taken place when you took over the claim?

A From myself or from the previous -- I don't know -- I just want to make sure what you're asking me.

Q From the previous adjuster.

A I don't recall what he did.

Q Okay. And you don't remember if it was only a visual inspection?

A No, I don't -- I don't recall what the previous adjuster did.

Q I mean, in your experience when there's water damage in a residence and a homeowner files a claim and there's an initial inspection, is that initial inspection usually only a visual inspection by State Farm?

MR. GELFOUND: Objection. Calls for incomplete hypothetical and speculation.

THE WITNESS: Every claim is handled on its own merits. So I can't speak to what other adjusters do when they're handling their claims.

BY MR. BAKHDANYAN:
Q Okay. On it -- you said "on its own merits." What do you mean by that?
A Meaning, like, I can only speak to what I do as an adjuster. I can't speak to what State Farm and the rest of its adjusters do.
Q Okay. But in your experience -- you know, you've been doing this for five years, correct?
A In my experience, I do a -- I do a visual inspection.
Q Only?
A Only? And I visit the property --
MR. GELFOUND: Sorry, sorry. Objection. Calls for incomplete hypothetical.
THE WITNESS: I do an inspection of the property. That's what I do.
BY MR. BAKHDANYAN:
Q Okay. And as part of your inspection, do you try to see what's behind walls, see what's behind a surface? You know, do you conduct any inspection where it goes beyond the visual inspection?
MR. GELFOUND: Objection. Calls for incomplete hypothetical.
THE WITNESS: I don't do any destructive testing or any intrusive inspections, only visual

surface inspections.

BY MR. BAKHDANYAN:

Q Okay. But let's say you do a visual surface inspection. Are there scenarios where a follow-up inspection is warranted where there's more intrusive testing done?

Meaning, you know, you look between a wall, you look beneath the surface. Has there ever been a scenario where a follow-up inspection is warranted?

MR. GELFOUND: Objection. Calls for incomplete hypothetical.

THE WITNESS: I have not been a part of that.

BY MR. BAKHDANYAN:

Q Do you know if State Farm for -- well, for this claim, do you know if State Farm authorized moisture testing as a follow-up to an initial inspection?

A I don't recall that.

Q Okay. Give me a second. Okay. I'm going to introduce an exhibit.

MR. BAKHDANYAN: And, Madam Court Reporter, I will email you all the exhibits I will use today after the conclusion of today's deposition, okay?

THE STENOGRAPHER: Okay. Thank you.

MR. BAKHDANYAN: No problem.

BY MR. BAKHDANYAN:
Q Okay. I'm sharing a document. Mr. Watkins, do you see the document that I am sharing?
A Yes.
Q Okay. Do you need me to zoom in or do you need me to stretch it out a bit?
A No. I can see it.
Q Okay. Perfect.
MR. BAKHDANYAN: And, Madam Court Reporter, I will mark this as Exhibit 1.
(Plaintiff's Exhibit No. 1 was marked for identification.)
BY MR. BAKHDANYAN:
Q I'll represent that this is the plumber's report -- the initial plumber's report. And, Mr. Watkins, do you recall seeing this report when you were assigned to this claim?
A Yes.
Q Okay. Do you recall if any adjusters assigned to this claim contacted the plumber?
A Besides myself?
Q Yes.
A I don't know. I don't recall.
Q Did you call the plumber after viewing this report to verify the facts of the loss?

A Yes.
Q When did you call him?
A I don't recall the date and time.
Q Okay. But what did you and the plumber talk about?
A The plumber never returned my calls.
Q Okay. So the -- so you never talked to the plumber?
A No. I was never able to make contact.
Q Okay. Okay. I'm going to stop sharing it. I'm going to share another document, and I am going to mark it as Exhibit 2.
And, Mr. Watkins, do you see the document I am sharing?
A Yes.
Q Okay. Have you seen this document before?
A Yes.
MR. BAKHDANYAN: Okay. And Madam Court Reporter, I will mark this as Exhibit 2. It is another report by the plumber, and it has been produced to defendant State Farm in discovery.
(Plaintiff's Exhibit No. 2 was marked for identification.)
BY MR. BAKHDANYAN:
Q So did you call the plumber after reviewing

this report by the plumber?

A At that time, I was only in contact with the attorney on the claim or who I thought was the attorney or attorney assistant.

Q Okay. I didn't understand that. You -- let me start over again. Have you seen this report?

A Yes.

Q Okay. Now, after seeing this report, did you contact the plumber?

A After seeing that -- that report was presented after my denial. My contact was to Roxy (ph), who was the representative, who he was the one speaking to the plumber. I was not able to speak to the plumber.

Oftentimes, plumbers refuse to speak to the insurance company.

Q Okay. But after receiving the report, did you try calling the plumber?

A I don't recall.

Q Okay. You don't recall at all?

A No. Honestly, I don't recall.

Q So did you try to call the plumber to verify what changes were made to the report?

A I don't recall.

Q I'm going to stop sharing. I'm going to show another document.

MR. BAKHDANYAN: Before I do, can we take a quick bathroom break?
MR. GELFOUND: Sure.
MR. BAKHDANYAN: Okay. Thank you very much.
THE STENOGRAPHER: Okay. Off the record.
(Brief recess taken.)
THE STENOGRAPHER: Back on.
MR. BAKHDANYAN: Okay. One second. I'm going to share another document. This will be marked as Exhibit 3.
(Plaintiff's Exhibit No. 3 was marked for identification.)
BY MR. BAKHDANYAN:
Q Okay. Mr. Watkins, do you see the document I am sharing?
A Yes.
Q Okay. Do you know what this document is?
A It appears to be an estimate. I can't -- I can only see the top half of it.
Q You can only see the top half. Okay. I'm just going to scroll through. This will be marked as Exhibit 3. I'll represent that it is Maze Restoration's mitigation invoice. And I'm just going to scroll through it.
Okay. Do you recall -- do you recall reviewing

their recommended scope of work?
A Yes.
Q Okay. After reviewing their invoice, did State Farm retain a mitigation vendor to evaluate whether the drying was necessary?
A I don't recall.
Q Okay. Do you know if anybody besides you recommended -- besides you was -- strike that. Do you know if anybody else who was on the claim file recommended a mitigation vendor to evaluate whether the drying was necessary after reviewing Maze Restoration's scope of work?
MR. GELFOUND: Objection. Calls for speculation.
THE WITNESS: I don't -- I don't -- I don't recall. I did not, no, I don't -- I don't recall.
BY MR. BAKHDANYAN:
Q Okay. And do you know if this invoice sought payment for drying services?
A I'm sorry. Did they request payment for drying?
Q Yes.
A I didn't -- I don't recall whether they requested payment for drying. I -- I -- I'm sure they would have to the insured, yes.

Q Okay. Do you know if the invoice sought payment for tear-out services?
A If we're speaking directly to this estimate, yes. That's what they would have been charging for.
Q Okay. Do you know if they asked for payment for contents handling?
A I don't recall the estimate --
MR. GELFOUND: Objection. Vague and ambiguous.
THE WITNESS: I don't recall the estimate well enough to know the exact line items in it.
BY MR. BAKHDANYAN:
Q And was there any reference to mold in this invoice?
A Once again, I don't remember the estimate well enough to speak to the line items in it.
Q You recall -- but do you recall there being any reference to mold remediation as far as the documents provided by Maze Restoration or concern?
A I do not recall.
MR. BAKHDANYAN: Okay. And, Madam Court Reporter, I'll mark this as Exhibit 3. I'll provide these documents after the depo. I'm going to share another exhibit. It's going to be some photographs taken by Maze Restoration. Give me a second.
BY MR. BAKHDANYAN:

Q Now, Mr. Watkins, do you see the document I'm sharing?
A Yes.
Q Did you say "yes"?
A Yes.
MR. BAKHDANYAN: Okay. I'll mark this as Exhibit 4. It's photographs taken by Maze Restoration.
(Plaintiff's Exhibit No. 4 was marked for identification.)
BY MR. BAKHDANYAN:
Q Now, Mr. Watkins, did you view all of the photographs taken by Maze Restoration?
A During the claims process I would have reviewed them.
Q Okay. I'm just going to scroll through these pictures. So you just take a look at them. Now, do you -- well, have you seen any mold in any of these mitigation photos provided by Maze Restoration.
MR. GELFOUND: Objection. Calls for speculation, legal conclusion and expert opinion.
THE WITNESS: It's hard to tell from your photographs if there's mold related. If there was a report -- if there was a mold remediation report entered into the claim for me to review and they

stated there was mold, I would take them at their word.

BY MR. BAKHDANYAN:

Q Understood. Okay. Let me go to some specific pages here. Give me a second. Now, this is Page 59 of -- well, it's Page 7 of Exhibit 4. It's marked as Page 59 in documents produced by Maze Restoration.

So, Mr. Watkins, do you see the photograph in front of you?

A Yes.

Q Okay. You see any water staining in these images?

MR. GELFOUND: Objection. Calls for speculation, legal conclusion and expert opinion.

THE WITNESS: From the photos, I can't tell exactly what stains from what's dirt removal versus, you know, exactly. So I would rely on --

MR. BAKHDANYAN: Okay.

THE WITNESS -- additional information for that.

BY MR. BAKHDANYAN:

Q Okay. But on the bottom here, do you see -- do you see where my cursor is?

A Yes.

Q What does that look like?

A Moisture.

Q Okay. What does it look like here?
A Possibly additional moisture.
Q Okay. So I'll go to another photo. Give me a second. I'll go to Page 8 of Exhibit 4. It's Page 60 in documents produced by Maze Restoration.
Now, Mr. Watkins, same question. Do you see any water staining? Do you see any water staining in this photograph?
MR. GELFOUND: Objection. Calls for speculation, legal conclusion and expert opinion.
THE WITNESS: I'm still looking at the same photograph. Did it change?
BY MR. BAKHDANYAN:
Q It's a different photograph. It's from a different angle. And I'll represent to you it's different. This is the previous photograph. It's on Page 7 of 12 --
A Okay.
Q -- in Exhibit 4, okay?
Now, this is on Page 8 of Exhibit 4. On Page 60 of the documents produced by Maze Restoration. It is from a different angle, Mr. Watkins, do you see any water staining present in these images?
MR. GELFOUND: Objection. Calls for speculation, legal conclusion and expert opinion.

THE WITNESS: Appears it could be moisture just like the previous photograph.

BY MR. BAKHDANYAN:

Q Now, do you know the difference between a slow leak or seepage and just a sudden water leak as far -- is concerned?

MR. GELFOUND: I'm sorry. Objection. Calls for legal conclusion, expert opinion and argumentative.

THE STENOGRAPHER: And you said, as far as what is concerned? We got cut off.

MR. BAKHDANYAN: As far as a property damage claim is concerned. Let me repeat the question, probably get the same objections, but I'll repeat it.

BY MR. BAKHDANYAN:

Q Do you know -- Mr. Watkins, do you know any difference between a slow leak or seepage and a sudden water leak?

MR. GELFOUND: Same objections.

THE WITNESS: I know what I've been trained to identify as the difference between the two.

BY MR. BAKHDANYAN:

Q What's the difference between the two?

MR. GELFOUND: Same objections.

THE WITNESS: The difference between a sudden inundation and a -- and a -- and a continuous leak. Are you talking about continuous leak or repeated leak? In this -- in this situation, we deemed it a repeated leak.

However, one is a sudden burst, which -- which generally requires -- is on a -- on a pressurized line, which is burst and continuous water flow, versus something that's leaking only during times of operation.

BY MR. BAKHDANYAN:

Q But in a sudden leak, water would be spread out everywhere, correct?

MR. GELFOUND: Objection. Calls for speculation, legal -- and legal conclusion and expert opinion.

THE WITNESS: In a sudden leak, water would be everywhere and continuously flowing.

BY MR. BAKHDANYAN:

Q Now, do you recall requesting water bills from the insured?

A Yes.

Q Okay. Going to share another document that will be marked as Exhibit 5.

Okay. Do you see the document I'm sharing,

Mr. Watkins?
A Yes.
Q Now, do you recall reviewing this specific bill?
A I don't recall that specific. I recall reviewing water bills.
MR. BAKHDANYAN: Okay. Madam Court Reporter, I'll mark this as Exhibit 5. I'll represent to you that it is a water bill produced by plaintiff and it was provided to defendant State Farm before filing -- before plaintiff filed a lawsuit.
(Plaintiff's Exhibit No. 5 was marked for identification.)
BY MR. BAKHDANYAN:
Q Now, Mr. Watkins, you said you don't recall viewing this water bill?
A If you ask me specific each one, I don't recall that. It was two years ago.
Q Okay. Now, do you know -- can you tell me the amount due stated for the water bill?
A It looks to be -- give me one second. I apologize. My computer.
Q Not a problem.
A Looks to be $1,604.60. Total charges --
Q Total charges. What does it say?

A 2,035.69.
Q Okay. Now, does it seem strange to you that the water bill was high for this time period? Period with a bill date of November 16, 2022?
MR. GELFOUND: Objection. Speculation -- hold on. Objection, speculation. Calls for legal conclusion, expert opinion.
THE WITNESS: I'm not certain that's the water bill that I reviewed. I'm not certain that's the water bill that was reviewed at the time of the loss.
I'm not sure how the '22 water bill correlates with a '23 claim, so I'd have to -- I can't answer that.
BY MR. BAKHDANYAN:
Q Okay. As part of this, you asked for water bills prior to the date of loss?
A Right. But I don't know how many months prior.
Q Okay. But in -- so we'll back up here. Did you review all the water bills provided by plaintiff?
A I don't recall.
Q Did you ever inquire as to why specific water bills were high?
A I don't recall.
Q Was a -- was part of the basis of your denial

a -- due to the high water bills?

A But that wasn't the basis of our denial. We use the water bills to try to find coverage, not deny it.

Q Okay. Did you -- did you conduct further investigation into, you know, the water bills before issuing a denial?

MR. BAKHDANYAN: Objection. Vague and ambiguous.

THE WITNESS: I'm going to have to ask -- I keep having them message me on this computer. So I don't want to interrupt your meeting. I don't know if it's glitching with the system. I apologize. Because of my work laptop. Can you still hear me?

MR. BAKHDANYAN: Yes.

THE WITNESS: So not -- not you guys. I'm sorry. I just was having an issue with my -- with my laptop here. Do I need to refresh? Can you still hear me? I don't know if it's kicking me off.

MR. BAKHDANYAN: I could -- we could hear you.

THE WITNESS: Oh, okay. I'm sorry. I apologize.

BY MR. BAKHDANYAN:

Q Okay. Now, did you -- did you look into the water bills before issuing a denial?

A Did I review the water bills before issuing

denial?
Q Yes.
A Yes.
Q Okay. Did it ever cross your mind why certain water bills were very high?
A I don't recall seeing a high water bill.
Q Okay. Did you personally go inspect the subject property?
A I don't recall.
Q Okay. Do you know who inspected the subject property?
A I don't recall.
Q Okay. Do you recall any of the conversations with the insured's previous law firm?
A I'm sorry. Do I recall any of the previous conversations with the --
Q Insured's previous law firm?
MR. GELFOUND: Objection. Vague and ambiguous and calls for speculation.
THE WITNESS: No. I don't recall all the conversations I had with -- if you're speaking of Roxy.
BY MR. BAKHDANYAN:
Q Yes. Okay. Now, after being presented by a new -- with a new plumber's report, did you try to

conduct an additional investigation?
MR. GELFOUND: Objection, vague and ambiguous.
THE WITNESS: I don't recall if we scheduled an additional inspection after the -- after we joined the plumbers after the -- are you talking about the second plumber's report?
BY MR. BAKHDANYAN:
Q Yes.
A I don't recall if we rescheduled an inspection.
Q Okay. But after being presented with new information, do you think it'd be wise to conduct an additional inspection?
MR. GELFOUND: Objection. Argumentative.
THE WITNESS: After my initial claims process, I rely on the direction of management.
BY MR. BAKHDANYAN:
Q Okay. You said your management is Ellen, correct?
A Yes.
Q What was the last name?
A Redmond.
Q Redmond. Do you know the name of the field adjusters who went and conducted any inspections at the subject property?
A I apologize. Can you repeat that? I'm sorry.

Q Do you know the names of the field adjusters or adjusters who conducted inspections of the subject property?
A I don't recall who they were -- who they were.
MR. BAKHDANYAN: Okay. And let's take a five-minute break. I'm going to look over my notes.
MR. GELFOUND: Okay.
(Brief recess taken.)
MR. BAKHDANYAN: Okay. I have no further questions.
MR. GELFOUND: I have no questions.
THE STENOGRAPHER: Okay. And for the orders?
MR. BAKHDANYAN: Yeah, I'll just get a -- a regular copy. How long would it take to get a regular copy?
THE STENOGRAPHER: It's ten business days.
MR. BAKHDANYAN: Ten business days. Okay. What's the next best option?
THE STENOGRAPHER: How soon do you need it?
MR. BAKHDANYAN: Let's do, like, five to seven. Every penny counts.
THE STENOGRAPHER: Got you. Let me -- let me just make sure. It'd be one, two, three, four, five. So that's Wednesday?
MR. BAKHDANYAN: Yes.

THE STENOGRAPHER: Okay. And, Mr. Gelfound, do you want to order a copy? And do you want to expedite?

MR. GELFOUND: Yes. Same time frame and yes, I'll take a copy, please.

THE STENOGRAPHER: Okay. All right. Sounds good.

(The reading of the transcript was reserved.)

(The proceedings concluded at 11:10 a.m.)

ERRATA SHEET

DO NOT WRITE ON THE TRANSCRIPT
ENTER CHANGES ON THIS PAGE

IN RE: LIANA HAMPARTSOUMIAN v. STATE FARM GENERAL INSURANCE COMPANY
WITNESS NAME: GALVIS WATKINS
DEPO DATE: 02/25/2026
{STENO Job No. 2428800}

| PAGE | LINE | CORRECTION AND REASON THEREFOR |
|---|---|---|
| | | |

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

DATE GALVIS WATKINS

CERTIFICATE OF OATH

STATE OF FLORIDA
COUNTY OF PASCO

I, Tomeka McAlpine, Court Reporter and Notary Public, State of Florida, certify that GALVIS WATKINS, personally appeared before me on the 25th day of February, 2026, and was duly sworn.

Signed this 4th day of March, 2026.

Tomeka McAlpine, Court Reporter
Notary Public, State of Florida
Commission No.: HH658095
Commission Expires: 3/27/2029

CERTIFICATE OF REPORTER

STATE OF FLORIDA
COUNTY OF PASCO

I, Tomeka McAlpine, Court Reporter, certify that I was authorized to and did stenographically report the remote deposition of GALVIS WATKINS, pages 1 through 37; that a review of the transcript was requested; and that the transcript is a true record of my stenographic notes.

I further certify that I am not a relative, employee, attorney, or counsel of any parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

Dated this 4th day of March, 2026.

Tomeka McAlpine
Court Reporter

## Exhibits

**Exhibit 1** 4:9 21:10, 11
**Exhibit 2** 4:10 22:12, 19,22
**Exhibit 3** 4:11 24:10, 11,21,22 26:21
**Exhibit 4** 4:12 27:7,9 28:6 29:4,19,20
**Exhibit 5** 4:13 31:24 32:8,12

## $

**$1,604.60** 32:24

## 1

**1** 21:10,11
**11:10** 38:9
**12** 29:17
**16** 33:4

## 2

**2** 22:12,19,22
**2,035.69** 33:1
**20** 7:9
**2022** 33:4
**2024** 16:13,14
**22** 33:12
**23** 33:13
**24** 6:23 11:19

## 3

**3** 24:10,11,22 26:21

## 4

**4** 27:7,9 28:6 29:4,19,20

## 5

**5** 31:24 32:8,12
**59** 28:5,7

## 6

**60** 29:4,21

## 7

**7** 28:6 29:17

## 8

**8** 29:4,20

## A

**a.m.** 38:9
**acknowledge** 5:13
**additional** 28:19 29:2 36:1,4,12
**adjusted** 14:2
**adjuster** 11:25 12:8, 9,10,15,17,20,21,22,23 13:15,20 18:11,16 19:5
**adjusters** 18:24 19:6 21:19 36:23 37:1,2
**administer** 5:15
**affirm** 5:18
**agree** 5:5
**agrees** 9:4
**alcohol** 11:19
**ambiguous** 7:13 17:24 26:8 34:8 35:18 36:2
**amount** 32:20
**angle** 29:15,22
**answering** 11:16
**answers** 9:5,13,22
**apologize** 32:22 34:12,21 36:25
**Appeared** 15:23
**appearing** 5:12
**appears** 24:18 30:1
**argumentative** 30:9 36:13
**assigned** 16:10,11 21:17,19
**assistant** 23:4
**Assumes** 17:24
**attorney** 23:3,4
**attorneys** 5:12
**audible** 9:5
**authority** 14:11,13, 15,16,17,19,20
**authorized** 20:15

## B

**back** 24:7 33:19
**Bakhdanyan** 6:1,7 7:14 15:14 17:7,13,15 18:3 19:1,17 20:2,13, 20,24 21:1,9,13 22:18, 24 24:1,4,8,13 25:17 26:11,20,25 27:6,11 28:3,18,20 29:13 30:3, 12,16,23 31:11,19 32:7, 14 33:15 34:7,14,19,22 35:23 36:7,16 37:5,9, 13,17,20,25
**based** 10:4
**basis** 33:25 34:2
**bathroom** 24:2
**began** 12:6
**beneath** 20:8
**bill** 32:4,9,16,20 33:3, 4,9,10,12 35:6
**bills** 31:20 32:6 33:17, 20,23 34:1,3,5,24,25 35:5
**bit** 21:6
**bottom** 28:21
**break** 11:11,12 24:2 37:6
**burst** 31:6,8
**business** 37:16,17

## C

**California** 8:8 13:16, 18 14:6 15:8
**call** 21:24 22:2,25 23:21
**calling** 23:17
**calls** 15:11 17:5 18:21 19:13,22 20:10 22:6 25:13 27:20 28:13 29:9, 24 30:7 31:14 33:6 35:19
**case** 8:2
**change** 29:12
**charges** 32:24,25
**charging** 26:4
**claim** 6:25 7:1,3,17 8:4,6 14:9,12 15:15,23, 25 16:4,12 17:11 18:1, 2,4,5,8,18,23 20:15 21:17,20 23:3 25:9 27:25 30:13 33:13
**claims** 11:25 12:7,9, 10,15,16 13:15 14:2,5 18:25 27:14 36:14
**comment** 9:23
**company** 13:11 23:15
**computer** 32:22 34:10
**concern** 26:18
**concerned** 10:21 30:6,11,13

**concluded** 38:9
**conclusion** 15:12 20:22 27:21 28:14 29:10,25 30:8 31:15 33:7
**concrete** 13:5,8
**conduct** 15:9 19:20 34:4 36:1,11
**conducted** 16:20,24 17:22 36:23 37:2
**consumed** 11:18
**contact** 22:9 23:2,9, 11
**contacted** 21:20
**contents** 26:6
**continuous** 31:2,3, 8
**continuously** 31:18
**contractor** 13:11
**contractors** 13:6,14
**contracts** 13:13
**conversations** 35:13,16,21
**copy** 37:14,15 38:2,5
**correct** 9:17 10:14,24 11:3 14:3 15:10 16:7 18:5,6 19:8 31:13 36:18
**correlates** 33:12
**cost** 10:16
**counsel** 5:5 7:20 9:19
**counts** 37:21
**court** 5:1,6 6:17 8:25 9:3,9,12 20:20 21:9 22:18 26:20 32:7
**coverage** 14:19,21 34:3
**credibility** 9:24
**cross** 35:4
**current** 11:24
**cursor** 28:22
**cut** 30:11

## D

**damage** 7:3 16:3,7 18:18 30:12
**date** 16:12 22:3 33:4, 17
**days** 37:16,17
**deemed** 31:4
**defendant** 8:19 22:21 32:10
**denial** 14:12,19,21 23:11 33:25 34:2,6,24 35:1
**deny** 34:3
**depending** 13:13
**depo** 26:22
**deposed** 6:20,24 7:22,23,24 8:3
**deposition** 5:1,8,12, 14,15 6:12,13,22 8:16 9:14,22 10:2 15:18 20:22
**desk** 10:7,9,10,11,21, 24 11:2,6 12:21
**destructive** 19:24
**difference** 10:18 11:7 30:4,18,22,24 31:1
**DIRECT** 5:25
**direction** 36:15
**directly** 12:5 26:3
**dirt** 28:16
**discharge** 16:6
**discovery** 22:21
**discrepancies** 9:23
**dishwasher** 16:6,9
**document** 21:2,3 22:11,13,16 23:25 24:9, 14,17 27:1 31:23,25
**documents** 15:17 26:17,22 28:7 29:5,21
**drugs** 11:18
**drying** 25:5,11,19,21, 24
**due** 32:20 34:1
**duly** 5:24
**duties** 12:16

## E

**effect** 6:16
**Ellen** 15:1,3,4 36:17
**email** 20:21
**employment** 12:24 13:1,2
**endorsed** 13:17
**ends** 9:15
**entered** 27:25
**entitled** 9:22
**estimate** 10:11,13, 16,19 11:1,3,6,8 12:18, 20 24:18 26:3,7,9,14
**estimates** 10:4 12:19
**evaluate** 14:11 25:4, 10
**evidence** 17:24
**exact** 26:10
**EXAMINATION** 5:25
**exhibit** 20:19 21:10, 11 22:12,19,22 24:10, 11,21 26:21,23 27:7,9 28:6 29:4,19,20 31:24 32:8,12
**exhibits** 20:21
**expand** 8:5
**expedite** 38:3
**experience** 18:17 19:7,9
**expert** 15:12 27:21 28:14 29:10,25 30:8 31:16 33:7
**explain** 10:18

## F

**facts** 7:5 17:24 21:25
**fair** 15:9
**familiar** 14:5 16:17
**Farm** 6:8 7:1 12:2,4,7, 11,13,14,24 13:1,2,3,16 15:2 17:21 18:20 19:5 20:14,15 22:21 25:4 32:10
**Farm's** 16:18
**field** 12:20,22,23 36:22 37:1
**file** 15:21,22,23,25 18:1,4 25:9
**filed** 8:1 32:11
**files** 18:18
**filing** 32:11
**final** 14:22,23
**find** 34:3
**findings** 14:18
**firm** 35:14,17
**five-minute** 37:6
**Florida** 5:3
**flow** 31:8
**flowing** 31:18
**follow-up** 20:4,9,16
**form** 9:14
**frame** 38:4
**front** 10:7,12,21,22 11:6 28:9
**full** 15:9
**fully** 6:11

## G

**G-A-L-V-I-S** 6:5
**Galvis** 5:23 6:5

**Gelfound** 7:12 15:11 17:4,23 18:21 19:13,22 20:10 24:3 25:13 26:8 27:20 28:13 29:9,24 30:7,20,25 31:14 33:5 35:18 36:2,13 37:7,11 38:1,4
**general** 13:14
**generally** 31:7
**Georgia** 13:22
**give** 5:19 10:6,11,12 11:1,2,5 20:18 26:24 28:5 29:3 32:21
**glitching** 34:12
**good** 6:2 38:7
**ground** 6:11
**guess** 10:3,19 11:8
**guessing** 11:7
**guys** 34:15

**H**

**half** 24:19,20
**Hampartsoumian** 6:8
**hand** 5:17
**handle** 14:8
**handled** 18:23
**handling** 14:6 15:15,24 18:25 26:6
**hard** 27:22
**head** 9:5
**hear** 34:13,18,19
**Hearing** 5:11
**held** 12:14
**Helen's** 15:2
**high** 33:3,23 34:1 35:5,6
**hold** 7:12 33:5
**homeowner** 18:18
**honestly** 7:16,19 13:25 23:20
**hose** 16:6
**hours** 11:19
**hypothetical** 18:22 19:14,23 20:11

**I**

**identification** 21:12 22:23 24:12 27:10 32:13
**identify** 30:22
**images** 28:12 29:23
**inaccuracies** 9:17
**incomplete** 18:21 19:14,22 20:10
**inconsistent** 9:21
**independent** 13:11,12
**industry** 13:6,8
**informal** 6:14
**information** 9:14 28:19 36:11
**informed** 6:12
**initial** 16:18 17:9,19,22 18:7,19 20:16 21:15 36:14
**inquire** 33:22
**inspect** 14:16 35:7
**inspected** 35:10
**inspection** 16:18,21,24 17:1,2,9,22 18:7,14,19,20 19:10,15,18,20,21 20:4,5,9,16 36:4,9,12
**inspections** 12:18,20 19:25 20:1 36:23 37:2
**insurance** 23:15
**insured** 25:25 31:21
**insured's** 35:14,17
**interior** 16:7
**interrupt** 34:11
**introduce** 6:6 20:19
**intrusive** 19:25 20:5
**inundation** 31:2
**investigate** 14:17
**investigation** 15:9 34:5 36:1
**investigations** 12:18
**invoice** 24:23 25:3,18 26:1,13
**issue** 34:16
**issues** 8:2
**issuing** 34:6,24,25
**items** 26:10,15

**J**

**January** 16:13,14
**job** 13:13
**joined** 36:4

**K**

**kicking** 34:18

**L**

**laptop** 34:13,17
**Large** 5:3
**law** 15:8 16:3 35:14,17
**lawsuit** 6:8 7:6,10 8:20,23 32:11
**leading** 16:7
**leak** 16:9 30:5,18,19 31:2,3,4,5,12,17
**leaking** 31:9
**led** 8:3
**legal** 15:11 27:21 28:14 29:10,25 30:8 31:15 33:6
**length** 11:2 13:13
**Liana** 6:8
**license** 14:1
**licensed** 5:5,7 13:16,17,19
**list** 14:1
**located** 8:14
**long** 12:3 13:7,8 37:14
**looked** 7:18
**loss** 7:5 8:7 21:25 33:11,17
**lot** 13:6

**M**

**Madam** 20:20 21:9 22:18 26:20 32:7
**made** 23:22
**make** 6:11 9:20 10:15 18:10 22:9 37:23
**malfunction** 16:7
**management** 36:15,17
**manager** 14:22 15:5,6
**manner** 5:10
**mark** 21:10 22:12,19 26:21 27:6 32:8
**marked** 21:11 22:22 24:9,11,21 27:9 28:6 31:24 32:12
**Maze** 24:22 25:11 26:18,24 27:7,13,19 28:7 29:5,21
**Mcalpine** 5:1
**Meaning** 7:22 14:16 19:4 20:7
**means** 9:4
**medications** 11:15
**meeting** 34:11
**merits** 18:24 19:2
**message** 34:10

**Mexico** 13:23
**mind** 35:4
**mislead** 7:17
**missing** 13:25
**Mississippi** 13:22
**mitigation** 24:23 25:4,10 27:19
**moisture** 20:15 28:25 29:2 30:1
**mold** 26:12,17 27:18, 23,24 28:1
**months** 33:18
**morning** 6:2
**Move** 17:14

**N**

**named** 8:19,22
**names** 37:1
**Nevada** 13:23
**nods** 9:6
**Non-responsive** 17:13
**Notary** 5:2
**notes** 15:23 17:8 37:6
**November** 33:4

**O**

**oath** 5:16 6:15,16
**object** 7:13
**objection** 5:9 15:11 17:5,13,23 18:21 19:13, 22 20:10 25:13 26:8 27:20 28:13 29:9,24 30:7 31:14 33:5,6 34:7 35:18 36:2,13
**objections** 9:13 30:14,20,25
**observations** 10:4
**observed** 10:13 16:17
**occupation** 11:24
**Oftentimes** 23:14
**Oklahoma** 13:23
**operation** 31:10
**opinion** 15:12 27:21 28:14 29:10,25 30:8 31:16 33:7
**opportunity** 9:16
**option** 37:18
**order** 38:2
**orders** 37:12

**P**

**pages** 28:5
**part** 8:17 19:18 20:12 33:16,25
**parties** 5:4,7
**party** 5:9
**past** 10:13 11:19 12:11
**payment** 14:12 25:19,20,24 26:2,5
**pending** 11:13
**penny** 37:21
**Perfect** 21:8
**period** 33:3
**person** 16:24
**person's** 9:10
**personally** 14:9 35:7
**ph** 23:11
**photo** 29:3
**photograph** 28:8 29:8,12,14,16 30:2
**photographs** 26:23 27:7,13,23
**photos** 17:10 27:19 28:15
**physically** 5:13
**pick** 13:12
**pictures** 27:17
**place** 18:7
**plaintiff** 6:7 8:11,23 32:9,11 33:20
**plaintiff's** 14:8 21:11 22:22 24:11 27:9 32:12
**plumber** 21:20,24 22:4,6,8,20,25 23:1,9, 13,17,21
**plumber's** 16:5,8 17:10,17 21:14,15 35:25 36:6
**plumbers** 23:14 36:5
**positions** 12:14
**Possibly** 29:2
**preliminary** 14:13, 14,18,20,21
**prepare** 15:17
**present** 5:13 14:18 29:23
**presented** 15:21 18:1 23:10 35:24 36:10
**pressurized** 31:7
**prevent** 11:16
**previous** 18:9,11,15 29:16 30:2 35:14,15,17
**prior** 12:23,24 13:1,2 33:17,18
**problem** 14:2 20:24 32:23
**procedures** 6:12
**proceed** 5:11
**proceedings** 38:9
**process** 27:14 36:14
**produced** 22:21 28:7 29:5,21 32:9
**property** 8:13 16:3 19:12,16 30:12 35:8,11 36:24 37:3
**provide** 10:4 26:21
**provided** 26:18 27:19 32:10 33:20
**Public** 5:2
**purposes** 10:2

**Q**

**question** 7:15 9:23, 25 10:2 11:13 17:16 29:6 30:13
**questions** 9:13 11:16 37:10,11
**quick** 24:2

**R**

**raise** 5:17
**read** 9:17
**reading** 38:8
**reason** 11:21
**recall** 7:7,10 8:4 15:15 17:6 18:12,15 20:17 21:16,19,23 22:3 23:18, 19,20,23 24:25 25:6,16, 23 26:7,9,16,19 31:20 32:3,5,15,17 33:21,24 35:6,9,12,13,15,20 36:3,9 37:4
**receiving** 23:16
**recess** 24:6 37:8
**recollection** 10:5 16:16
**recommend** 14:12
**recommended** 25:1,8,10
**record** 6:3,4 9:4 24:5
**recording** 9:12
**Redmond** 15:1 36:21,22
**reduce** 9:13
**reference** 26:12,17
**refresh** 34:17
**refuse** 23:14

**regular** 37:14,15
**regulations** 14:6
**related** 27:23
**rely** 28:17 36:15
**remediation** 26:17 27:24
**remember** 7:17,18, 19 8:6,7,10,13 16:8,12, 13 18:13 26:14
**remind** 6:14
**Remote** 5:1
**remotely** 5:15,16
**removal** 28:16
**repeat** 30:13,14 36:25
**repeated** 31:3,5
**rephrase** 7:22 10:15 17:20
**report** 16:5,8,23 17:8, 10,17,19,21 21:15,16, 25 22:20 23:1,6,8,10, 16,22 27:24 35:25 36:6
**reported** 16:2
**reporter** 5:2,6 9:3,9, 12 20:20 21:9 22:19 26:21 32:7
**reporting** 5:10,14
**represent** 6:7 21:14 24:22 29:15 32:8
**representative** 17:22 23:12
**request** 25:20
**requested** 25:24
**requesting** 31:20
**requires** 15:8 31:7
**rescheduled** 36:9
**reserved** 38:8
**residence** 18:18
**respect** 8:14
**rest** 19:6
**Restoration** 26:18, 24 27:8,13,19 28:7 29:5,21
**Restoration's** 24:22 25:11
**results** 16:23
**retain** 25:4
**returned** 22:6
**review** 15:17,20 16:11,23 27:25 33:20 34:25
**reviewed** 15:21 17:8, 10,19,21,25 18:4 27:14 33:9,10
**reviewing** 22:25 24:25 25:3,11 32:3,6
**reword** 10:1
**role** 7:21 12:7,8 15:2
**room** 5:14
**Roxy** 23:11 35:22
**rules** 6:11

## S

**scenario** 20:8
**scenarios** 20:4
**scheduled** 36:3
**scope** 25:1,12
**scroll** 24:21,23 27:16
**seepage** 30:5,18
**services** 25:19 26:2
**setting** 6:14
**shakes** 9:5
**share** 22:11 24:9 26:22 31:23
**sharing** 21:2,3 22:10, 14 23:24 24:15 27:2 31:25
**shoulder** 9:6
**show** 23:24
**shrugs** 9:6
**sign** 9:18
**sitting** 10:6,11 11:6
**situation** 31:4
**slow** 30:4,18
**sort** 13:12
**sought** 25:18 26:1
**Sounds** 38:6
**speak** 18:24 19:4,5 23:13,14 26:15
**speaking** 23:12 26:3 35:21
**specific** 13:10 28:4 32:3,5,17 33:22
**specifically** 16:12
**speculation** 17:5 18:22 25:14 27:21 28:14 29:10,25 31:15 33:5,6 35:19
**spell** 6:2
**spread** 31:12
**staining** 28:11 29:7, 23
**stains** 28:16
**start** 6:10 23:6
**state** 5:2,6,11 6:2,8 7:1 8:8 12:2,3,6,11,13, 14,24 13:1,2,3,16,17 15:2 16:18 17:20,21 18:20 19:5 20:14,15 22:21 25:3 32:10
**stated** 5:10 16:5 28:1 32:20
**states** 13:19,20 14:3
**stating** 16:9
**STENOGRAPHER** 5:4,22 20:23 24:5,7 30:10 37:12,16,19,22 38:1,6
**stipulate** 5:7
**stop** 22:10 23:24
**strange** 33:2
**stretch** 21:6
**strike** 17:14,20 25:8
**subject** 35:8,10 36:24 37:2
**sudden** 30:5,18 31:1, 6,12,17
**suit** 8:1
**surface** 19:20 20:1,3, 8
**swear** 5:18
**sworn** 5:24 6:15
**system** 34:12

## T

**talk** 6:10 22:4
**talked** 22:7
**talking** 17:17 31:3 36:5
**tear-out** 26:2
**ten** 7:10 37:16,17
**testified** 5:24 8:25
**testifying** 6:17
**testimony** 5:18 11:22
**testing** 19:25 20:6,16
**Texas** 13:17
**thought** 23:3
**time** 11:11 12:13 16:15 22:3 23:2 33:3,10 38:4
**times** 31:9
**today** 9:25 11:22 20:21
**today's** 10:2 15:18 20:22
**Tomeka** 5:1
**top** 24:19,20
**Total** 32:24,25
**trained** 30:21
**transcript** 9:14,17, 18,21 38:8

**trial** 9:23
**truth** 5:19,20 6:16
**Twenty** 13:9

**U**

**U.S.** 14:3
**unbiased** 15:9
**unclear** 9:25
**understand** 6:18 9:7,10 10:16 11:7,13 15:8 23:5
**understanding** 11:9
**Understood** 13:15 28:4
**United** 13:20

**V**

**vague** 7:13 17:23 26:8 34:7 35:18 36:2
**vendor** 25:4,10
**verbatim** 9:3
**verify** 21:25 23:21
**Vermont** 13:24
**versus** 28:16 31:9
**view** 27:12
**viewing** 21:24 32:16
**Vince** 6:7
**visit** 19:12
**visual** 17:2 18:14,20 19:9,21,25 20:3

**W**

**W-A-T-K-I-N-S** 6:5
**wall** 20:7
**walls** 19:19
**warn** 9:20
**warranted** 20:5,9
**water** 7:3 8:7 16:7 18:17 28:11 29:7,23 30:5,19 31:8,12,17,20 32:6,9,16,20 33:3,8,10, 12,16,20,22 34:1,3,5, 24,25 35:5,6
**Watkins** 5:17,23 6:5 7:15 21:2,16 22:13 24:14 27:1,12 28:8 29:6,22 30:17 32:1,15
**Wednesday** 37:24
**wise** 36:11
**word** 28:2
**words** 9:10
**work** 12:1 25:1,12 34:13
**worked** 13:5,6
**working** 12:3,6,25 13:7,8,10
**writing** 12:18,20

**Y**

**years** 7:7,9 12:5,7,11 13:9 19:8 32:18

**Z**

**zoom** 21:5