UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIANA HAMPARTSOUMIAN,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM GENERAL INSURANCE COMPANY et al,<br><br>Defendant. | CASE NO. 2:25-cv-00404-JLS-AS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 32)** |

Before the Court is a Motion for Summary Judgment filed by Defendant State Farm General Insurance Co. (Mot., Doc. 32.) Plaintiff opposed and Defendant responded. (Opp., Doc. 33; Reply, Doc. 35.) Having considered the parties' briefs and held oral argument, the Court now GRANTS IN PART AND DENIES IN PART Defendant's Motion for the reasons stated below.

## I. BACKGROUND

Plaintiff Liana Hampartsoumian resided at a property insured by a Homeowners Policy (the "Policy") issued by Defendant State Farm. (Defendant's Statement of Undisputed Facts ("SUF") ¶ 1, Doc. 32-8; Plaintiff's Reply to SUF ¶ 1, Doc. 33-9.) The Policy contained a "Continuous or Repeated Seepage or Leakage" ("CRSL") exclusion, which provides as follows:

> ***We*** will not pay for, under any part of this policy, any loss that is caused by one or more of the items below, regardless of whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the **residence premises**, arises from natural or external forces, or occurs as a result of any combination of these: . . . c. **Water**, meaning: . . . (9) seepage or leakage of water, steam, or sewage that occurs or develops over a period of time: (a) and is: (i) continuous; (ii) repeating; (iii) gradual; (iv) intermittent; (v) slow; or (vi) trickling; and (b) from a: . . . (ii) household appliance[.]

(SUF, Reply to SUF ¶ 2; Ex. 1 to Redmond Decl., "Policy," at 34–35, Doc. 32-5.)

On September 1, 2023, Plaintiff left her residence and returned to find water on the kitchen floor and surrounding areas that appeared to originate from the dishwasher. (Plaintiff's Statement of Additional Material Facts ("AMF") ¶¶ 5–7, Doc. 33-9; Defendant's Reply to AMF ¶¶ 5–7, Doc. 35-2; Hampartsoumian Decl. ¶¶ 6–7, Doc. 33-7.) Plaintiff did not notice any issues with her dishwasher prior to that day. (AMF, Reply to AMF ¶ 3; Hampartsoumian Decl. ¶ 4.) The same day, Plaintiff's son called a plumber to the property, who observed that the dishwasher's air gap hose, which connects the appliance to the kitchen sink drain line, was disconnected. (SUF, Reply to SUF ¶ 4.) The plumber reattached the air gap hose to the drain line and secured it with a clamp to prevent

further leaking. (*Id.*) In a declaration submitted by Defendant, the plumber stated that he "observed that the dishwasher airgap hose, which connects to the kitchen sink drain line, was disconnected and leaking a small amount of water." (Aguilar Decl. ¶ 3, Doc. 32-2.)

There are two versions of the plumber's invoice in the record. Defendant submitted a version dated September 1, 2023, which reads: "Dishwasher discharge hose was leaking. Put into Air gap with replacement hose clamp. No leaks." (Ex. 19 to Duong Decl. at 17, Doc. 32-1.) Plaintiff submitted an undated version which reads: "the dishwasher discharge hose bursted & had to go ahead & repair it by connecting it back into the air gap." (Ex. 2 to Bakhdanyan Decl., Doc. 33-3.) Defendant additionally submitted a declaration from the plumber stating that he was contacted on February 28, 2024 by Plaintiff's counsel and asked to "revise the description of the issue from a 'leak' to a 'burst.'" (Aguilar Decl. ¶ 5.) Plaintiff maintains that the "contemporaneous plumber invoice states that the dishwasher discharge hose had 'burst / had come part.'" (Reply to SUF ¶ 5.)

On September 15, 2023, Defendant's claims adjuster inspected the property. (SUF, Reply to SUF ¶ 8.) Photographs taken on September 23, 2023 show that Maze Restoration, Inc. performed water mitigation services that involved removing flooring and areas of the walls in the kitchen, dining and living room area. (SUF, Reply to SUF ¶ 9.) Defendant did not authorize this restoration work. (*Id.*)

On October 23, 2023, Defendant's adjuster conducted a second inspection of the property. (SUF, Reply to SUF ¶ 10.) On February 5, 2024, Defendant requested six months of water bills to determine if there was an increase in water usage around the time of the loss. (SUF, Reply to SUF ¶ 13.) On February 27, 2024, Defendant issued a denial letter, stating that the water damage was not covered under the Policy's CRSL exclusion. (SUF, Reply to SUF ¶ 15.) This determination was based on "Plaintiff's statements, State Farm's inspections, photographs, and the plumber's report." (*Id.*) On March 7, 2024, Defendant received a request for reconsideration from Plaintiff and a revised plumber's report. (SUF, Reply to SUF ¶ 17.) On March 18, 2024, Defendant issued another denial

letter, stating that even with the additional documentation, the details of the loss were still indicative of seepage or leakage of water over a period of time. (SUF, Reply to SUF ¶ 20.) On June 17, 2024, Defendant issued its final denial letter. (SUF, Reply to SUF ¶ 22.)

Attached to Defendant's motion is a Declaration from its expert Robert Carnahan. (Carnahan Decl., Doc. 32-3.) Carnahan stated that "photographs taken by Maze on September 1, 2023, do not show signs of a large-scale inundation of water, such as standing water inside the home." (*Id.* ¶ 6.) He further stated that according to the product specifications for Plaintiff's dishwasher, the appliance uses 3.2 gallons of water per cycle. (*Id.* ¶ 7.) Thus, "if the entirety of the water used in a single cycle were discharged into the kitchen area due to a disconnected drain line, the total volume released would be very small, but nevertheless easily detectable." (*Id.*) Lastly, Carnahan testified that: "If there was leakage prior to September 1, 2023, the discharge hose may have loosened over time and leaked prior to completely separating." (*Id.* ¶ 8.) If this occurred, "water would be released intermittently and in limited quantities corresponding to dishwasher operation cycles." (*Id.*)

On December 2, 2024, Plaintiff filed her Complaint in Los Angeles County Superior Court. (Compl., Doc. 1-2.) Plaintiff brings three causes of action for: (1) Breach of Contract; (2) Bad Faith Denial of an Insurance Claim; and (3) Declaratory Relief. (*See generally* Compl.) On January 15, 2025, Defendant removed the action to federal court, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Not. of Removal, Doc. 1.) Plaintiff originally sought general and compensatory damages, exemplary and punitive damages, costs, and attorneys' fees. (Compl. at 13.) On April 3, 2024, this Court granted Defendant's Motion to Dismiss Plaintiff's claim for punitive damages and denied the Motion to Dismiss Plaintiff's bad faith claim. (Order Granting in Part MTD at 5, Doc. 22.) Defendant now moves for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075, 1079-80 (9th Cir. 2004) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting Fed. R. Civ. P. 56(c))). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" when its resolution "'might affect the outcome of the suit under the governing law.'" *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) (quoting *Anderson*, 477 U.S. at 248).

"If the moving party satisfies its initial burden of production, the nonmoving party must produce admissible evidence to show that a genuine issue of material fact exists." *Bernstein*, 365 F. Supp. 3d at 984 (citing *Nissan Fire*, 210 F.3d at 1102). "If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment." *Bernstein*, 365 F. Supp. 3d at 984 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The non-moving party does not meet this burden by showing "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The United States Supreme Court has held that "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Anderson*, 477 U.S. at 252. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. When ruling on a summary judgment motion, the Court must examine all the evidence in the light most favorable to the non-moving party.

*Celotex*, 477 U.S. at 325. The Court cannot engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the jury. *Anderson*, 477 U.S. at 255. Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 990–91 (9th Cir.1991).

## III. DISCUSSION

### A. Breach of Contract

"To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014) (citation omitted). At this stage, the parties only dispute whether Defendant breached the contract by wrongly applying the CRSL exception.

The Policy provides that:

> [Defendant] will not pay for, under any part of this policy, any loss that is caused by . . . seepage or leakage of water, steam, or sewage that occurs or develops over a period of time: (a) and is: i. continuous; ii. repeating; iii. gradual; iv. intermittent; v. slow; or vi. trickling; (b) from a . . . household appliance.

(SUF, Reply to SUF ¶ 2; Policy at 34–35.)

Defendant first argues that the dishwasher malfunction at issue here falls into the exclusion because "when water is released gradually over time, even if the initial plumbing failure occurred suddenly, the resulting damage is not 'sudden.'" (Mot. at 15.) California courts have held that a plumbing failure is not a "conceptually distinct event" from the leakage that follows. *See Finn v. Continental Ins. Co.*, 218 Cal. App. 3d 69, 72 (1990). Thus, even if a "pipe burst suddenly," it does not change the fact that "the release of water . . . was constant or intermittent, and occurred over a period of [months]." *Brown v. Mid-Century Ins. Co.*, 215 Cal. App. 4th 841, 851–52 (2013). While California courts have not created a bright-line rule about how long water discharge must occur to fall into the

exclusion, they "have noted that sudden has a temporal element and does not mean a gradual or continuous discharge." *Mojica v. State Farm General Ins. Co.*, 735 F. Supp. 3d 1247, 1255 (S.D. Cal. 2024) (quoting *Brown*, 215 Cal. App. at 852) (citation modified). Thus, the relevant inquiry for purposes of this exclusion is the manner in which water was released.

Here, it is undisputed that "the dishwasher air gap hose, which connects to the kitchen sink drain line, was disconnected," and that "the plumber reattached the dishwasher discharge hose to the air gap to secure it with a clamp." (SUF, Reply to SUF ¶ 4; AMF ¶ 15.) Defendant's expert stated that the maximum amount of water that could have been discharged through the disconnected hose is 3.2 gallons, which is the amount of water used per cycle by Plaintiff's dishwasher. (SUF ¶ 25; Carnahan Decl. ¶ 7.) Plaintiff states that on the day of the incident, she left home "and the dishwasher appeared to be operating normally," but when she returned, she "discovered significant water on the kitchen floor and surrounding areas." (Hampartsoumian Decl. ¶¶ 6–7.)

Defendant puts forward little evidence about how the water Plaintiff discovered on her kitchen floor was discharged.[1] Instead, Defendant disputes the characterization of the malfunction as a "burst," and argues that the malfunction was a simple disconnect. (Mot. at 17–18.) But neither the plumber's characterization of this malfunction, nor the ease with which it was fixed, bear on the relevant inquiry: the speed with which the water Plaintiff discovered was produced. Defendant's sole piece of evidence that the dishwasher hose leaked continuously is a declaration by the plumber stating that he "observed that the dishwasher airgap hose, which connects to the kitchen sink drain line, was disconnected and leaking a small amount of water." (Aguilar Decl. ¶ 3.) But the nature of the

[1] Defendant argues that photos taken by Maze Restoration "do not show signs of a large-scale inundation of water, such as standing water inside the home." (Reply to AMF ¶ 6; *see also* Carnahan Decl. ¶ 6.) At summary judgment, however, the Court does not resolve disputed facts about the overall amount of water or the extent of the damage. It is undisputed that Plaintiff discovered water on her kitchen floor.

malfunction is that wastewater produced during a dishwasher cycle would be discharged en route to the kitchen sink drain line. Thus, the plumber's declaration as to the amount of water leaking at the time he reconnected the line, with no indication of whether the dishwasher was running a cycle, does little to raise beyond dispute how the water Plaintiff discovered on her floor was produced.

Defendant's evidence that the dishwasher leak was not sudden comes from the testimony of Defendant's expert. (*See* Carnahan Decl. ¶ 8 ("If there was leakage prior to September 1, 2023, the discharge hose may have loosened over time and leaked prior to completely separating.").) But it is equally plausible that Plaintiff's discharge hose detached suddenly, causing her dishwasher to emit 3.2 gallons of water over the course of a single wash cycle. *See Brown*, 215 Cal. App. 4th at 853 ("A dishwasher hose breaking in mid-cycle . . . is a sudden discharge of water."). A reasonable jury could find that the dishwasher released a single cycle's volume of water, and that this discharge was "sudden" such that it is not covered by the policy exclusion.

The fact that Plaintiff has not put forth expert evidence regarding "the cause or origin" of the malfunction does not mandate summary judgment for Defendant. (*See* Reply at 7.) The cause of the malfunction is relevant to the applicability of the exclusion only insofar as it sheds light on the nature of the water loss. Even taking Defendant's expert's characterization of the defect as true, a jury could still determine that a sudden discharge of water occurred. If the jury believes Plaintiff's testimony that the dishwasher was working correctly before she left in the morning, there is a triable issue as to whether the malfunction caused sudden water loss such that it falls outside the policy exclusion. Accordingly, Defendant's motion for summary judgment as to Plaintiff's breach of contract claim is DENIED.

**B. Bad Faith Denial of an Insurance Claim**

Under California law, to establish a breach of the implied covenant of good faith and fair dealing, Plaintiff must show: "(1) benefits due under the policy were withheld; and

(2) the reason for withholding benefits was unreasonable or without proper cause." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). "[A] bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage." *Id.* The genuine dispute rule "allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1162 (9th Cir. 2002).

Seemingly acknowledging that there remains a genuine dispute as to coverage, Plaintiff argues that the genuine dispute doctrine "does not relieve an insurer of liability where the insurer's investigation was inadequate or biased." (Opp. at 12.) Plaintiff first argues that Defendant did not thoroughly investigate Plaintiff's claim prior to denying coverage.[2] (Opp. at 13–14.) Plaintiff relies primarily on the testimony of claims adjuster Gary Watkins, who stated that he (1) remembered the original plumber's report wrote that the loss involved a dishwasher leak; (2) was not familiar with what was observed during Defendant's initial inspection; and (3) that his inspections were limited to visual surface inspection. (*See* AMF ¶ 16–18.) But Watkins was not the claims adjuster initially assigned to the case so his lack of personal knowledge about the initial inspection does not create a factual dispute as to the sufficiency of that investigation. (Watkins Dep. at 17, Doc. 33-2.) And Defendant's ability to investigate the dishwasher and discharge hose were limited because Plaintiff removed the dishwasher and began restoration work without authorization before Defendant's second inspection. (SUF ¶ 9.) Plaintiff has therefore not

[2] As a threshold matter, Plaintiff argues that Defendant's investigation was inadequate in part because its expert, Robert Carnahan, did not inspect the dishwasher before offering a causation opinion, and therefore his theory of gradual seepage is speculative. (*See* Opp. at 13, 14.) But Carnahan's expert opinion was prepared for litigation, rather than as a part of Defendant's determination of coverage. (*See* SUF ¶ 22 (final denial letter issued June 17, 2024); Carnahan Decl. ¶ 3 (representing that he was retained on February 23, 2026).) Therefore, the adequacy of Carnahan's investigation has no bearing on whether Defendant denied Plaintiff's claim in bad faith.

shown what further investigation was in Defendant's power to complete nor why any further investigation was necessary. Accordingly, Plaintiff has not raised a triable issue as to whether Defendant's investigation was unreasonable.

Plaintiff also argues that Defendant discounted or ignored the "contemporaneous evidence available," which supported sudden water discharge rather than gradual seepage. (Opp. at 14.) But multiple pieces of evidence supported Defendant's determination. For example, it is undisputed that Defendant's evidence includes an original plumber's invoice, stating that the "[d]ishwasher discharge hose was leaking." (Ex. 19 to Duong Decl. at 17, Doc. 32-1.) Defendant additionally tried to corroborate Plaintiff's claim by looking for a spike in water usage as evidence of sudden water discharge, which it did not find. (SUF ¶ 13–14; Watkins Dep. at 35 ("We use the water bills to try to find coverage, not deny it.").) That Defendant chose to credit other evidence over the testimony of Plaintiff and her mitigation contractor does not create a triable issue as to whether the denial was prompted "by a conscious and deliberate act" beyond an "honest mistake[], bad judgment, or negligence." *Shamiryan v. Allstate Northbrook Indemn. Co.*, 550 F. Supp. 3d 838, 846 (C.D. Cal. 2021). Indeed, it appears that Plaintiff's own conduct—contacting the plumber during Defendant's investigation to have the plumber change his report to reflect a "burst" instead of a "leak"—could have reasonably caused Defendant to question the reliability of Plaintiff's account.

Accordingly, Plaintiff has failed to raise a triable issue as to whether Defendant's denial of her insurance claim was in bad faith. Defendant's motion for summary judgment as to this claim is GRANTED.

**C. Declaratory Relief**

Having granted summary judgment as to Plaintiff's bad faith claim, the Court also GRANTS Defendant's motion for summary judgment as to Plaintiff's claim for declaratory relief on the same cause of action. *See Gafcon, Inc. v. Ponsor & Associates*, 98 Cal. App. 4th 1388, 1402 (2002) (Defendant may establish Plaintiff is not entitled to

declaration in its favor because "the sought-after declaration is legally incorrect" or "undisputed facts do not support the premise for the sought-after declaration").

As to declaratory relief for Plaintiff's contract claim, under California law, "declaratory relief is designed in large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation." *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 648 (2009). "The court may refuse to [grant declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." Cal. Civ. Pro. Code § 1061. Thus, some courts have held that "[w]here the rights of the complaining party have crystallized into a cause of action for past wrongs, a court may refuse to entertain an action for declaratory relief." *Camillo v. Washington Mut. Bank, F.A.*, 2009 WL 3614793, at *13 (E.D. Cal. Oct. 27, 2009); *see also Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) (A declaratory relief claim should not be used "to determine identical issues subsumed within other claims").

Plaintiff has not shown any issues that her claim for declaratory relief will resolve beyond those raised by her other claims. Instead, she maintains that "[t]he fact that the declaratory claim overlaps with the breach of contract claim does not render it improper; rather, it reflects the reality that insurance coverage disputes often involve contractual damages and judicial clarification of policy rights." (Opp. at 33.) But the policy rights that Plaintiff seeks to clarify are that her losses are covered and that Defendant wrongly denied coverage. (Compl. ¶¶ 44–45.) These contentions will necessarily be determined by a trial on Plaintiff's breach of contract claim. The Court therefore declines to consider this claim as "redundant of alleged causes of action and therefore unnecessary." *Camillo*, 2009 WL 3614793, at *13. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Plaintiff's third claim for declaratory relief.

**IV.CONCLUSION**

For the foregoing reasons, the Court GRANTS summary judgment as to Plaintiff's second and third claims for bad faith denial of an insurance claim and declaratory relief. Defendant's motion for summary judgment as to Plaintiff's first claim for breach of contract is DENIED.

DATED: April 17, 2026

HON. JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE